# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NIAGARA
------------------------------------------------------------------X
FRANCES MOODY,

                                    Plaintiff,                    Date Purchased:

                   - against -                                   SUMMONS

ALLERGAN USA, INC.,                                              Index No.:

                                    Defendant.
------------------------------------------------------------------X

     Plaintiff designates Niagara County as the place of trial. The basis of venue is the residence of plaintiff, located at 5537 Twilight Lane, Lockport, New York 14094.

     To the above named Defendant:

     You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this supplemental summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     New York, New York
          October 12, 2016

                    MUNAWAR & ANDREWS-SANTILLO, LLP
                    Attorneys for Plaintiff
                    420 Lexington Avenue, Suite 2601
                    New York, NY 10170
                    (212) 400-4000

                    BY:    JOSEPH PARISE, ESQ.

TO:

ALLERGAN USA, INC.
C/O C T Corporation System
111 Eighth Avenue
New York, New York 10011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NIAGARA
-----------------------------------------------------------------X

FRANCES MOODY,

            Plaintiff,

    -against-

ALLERGAN USA, INC.,

            Defendant.

-----------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index No.:

Plaintiff, FRANCES MOODY ("Plaintiff"), by and through her attorneys, MUNAWAR & ANDREWS-SANTILLO, LLP, complaining of Defendant, respectfully alleges, upon information and belief, and at all times hereinafter mentioned, as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action for personal injury and damages caused by Defendant, ALLERGAN USA, INC.'s ("Allergan" or "Defendant") design, development, testing, assembling, manufacturing, packaging, labeling, preparing, distributing, marketing, supplying, and/or selling of the LAP-BAND Adjustable Gastric Banding System, a surgically implanted gastric banding system (hereinafter "LAP-BAND").

2.    Defendant is in the for profit business of designing, manufacturing, marketing, promoting, and selling of medical devices, including the LAP-BAND. As a result of the LAP-BAND's defects, patients, including Plaintiff, that have had the LAP-BAND implanted, have endured, or will endure, unnecessary pain, suffering and injury, including but not limited to, lap-band erosion, gastric perforation, and pelvic abscess, the need for removal/revision surgery, and an increased risk of complications and death from

removal/revision surgery.  Defendant, despite knowledge of the LAP-BAND's defects have continued to aggressively market the LAP-BAND, claiming it is a safe and effective weight loss system.

3.     Plaintiff's suffering could easily have been prevented.  Plaintiff would not have suffered from unnecessary pain and debilitation, as well as the need to undergo subsequent surgery, had Defendant taken the affirmative step of recalling the LAP-BAND when complaints were made to the FDA regarding the LAP-BAND's failures, or had Defendant at least warned the medical community and the public of the dangers of the LAP-BAND so that those who had the LAP-BAND implanted could be monitored for signs of failure of the LAP-BAND.  Plaintiff seeks redress for her injuries.

4.     Plaintiff brings this action under the laws of the State of New York.  To the extent Plaintiff relies upon federal law or regulation governing the design, manufacturer, and sale of a medical device, Plaintiff does so for the purposes of pleading "parallel" state law claims.

5.     Plaintiff is over the age of majority and a citizen and resident of Niagara County in the State of New York.  Plaintiff has been injured due to a defective medical device manufactured and distributed by Defendant.

6.     Defendant, Allergan USA, Inc., is a legal entity incorporated in the State of Delaware, authorized and doing business in the State of New York, registered in Albany County, with its principle place of business in Irvine, California, and whose agent for service of process in the State of New York is C T Corporation System, 111 Eighth Avenue, New York, New York 10011.

7.    Defendant designed, manufactured, marketed, promoted, and sold the LAP-BAND Adjustable Gastric Banding System that is the subject to this lawsuit. The employees of defendant, its subsidiaries, affiliates, and other related entities, as well as the employees of Defendant's subsidiaries, affiliates, and other related entities, were the agents, servants, and employees of Defendant, and at all relevant times were acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendant, such allegations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified, and/or directed such act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

8.    Plaintiff's claims for relief arise from a defective LAP-BAND system designed, developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied and sold by the Defendant.

9.    Defendant's LAP-BAND is a laparoscopically implanted gastric banding system ostensibly used to help patients lose weight. Defendant manufactured, sold, and marketed the LAP-BAND to the public, even though they knew, or should have known of the danger that the LAP-BAND posed to the public.

10.    As a result of the LAP-BAND's defects, recipients of same suffered complications, including band slippage and gastrointestinal erosion, which necessitated the need for surgery to remove the LAP-BAND. These revision surgeries to remove the LAP-BAND and repair gastrointestinal damage caused by the LAP-BAND present

enormous risks to patients because they are more difficult due to injury caused by the LAP-BAND, the patient is at higher risk for complications and death, and the recovery time is prolonged as compared to the original implant procedure.

11.     Defendant knew or should have known that the LAP-BAND posed significant health risks based on the widely reported problems with the LAP-BAND. Even with this knowledge, Defendant recklessly and negligently sold, manufactured, marketed, and distributed the defectively designed and/or defectively manufactured LAP-BAND in complete disregard for the safety of consumers, including Plaintiff.

12.     Defendant failed to warn physicians, including bariatric surgeons, and other consumers, including Plaintiff, that the LAP-BAND was not properly designed, manufactured, assembled, and/or tested.

13.     On or about February 7, 2011, Plaintiff was implanted with Defendant's LAP-BAND, Lot # 1623962. at Sisters of Charity Hospital of Buffalo, ostensibly to treat her for obesity, a use for which Defendant designed, manufactured, marketed and sold the LAP-BAND.

14.     An employee and/or agent of Defendant provided the LAP-BAND to Plaintiff's surgeon, who implanted the device on or about February 7, 2011.

15.     The LAP-BAND was expected to and did reach Plaintiff without substantial change in the condition in which it was packaged, distributed, and sold by Defendant.

16.     At all times hereto, the LAP-BAND was used in a manner reasonably foreseeable to Defendant.

17.     Following implantation of the LAP-BAND, Plaintiff experienced gastrointestinal issues for a period of time.

18.    On or about March 21, 2014, Plaintiff underwent double-contrast upper gastrointestinal radiography, revealing the LAP-BAND in the region of the gastric fundus at the level of the gastroesophageal junction.

19.    As a result of Defendant's conduct, on or about April 17, 2014, Plaintiff underwent removal of the LAP-BAND due to LAP-BAND slippage and gastric erosion at Erie County Medical Center.  Operative findings included erosion with perforation of the stomach, which necessitated a repair of the gastric perforation, along with LAP-BAND removal.

20.    As a direct and proximate result of Defendant's conduct, Plaintiff was implanted with the LAP-BAND, and subsequently suffered complications that required surgery to remove the LAP-BAND and repair damage caused to the gastrointestinal system by the LAP-BAND.

21.    As a result of Defendant's defective LAP-BAND, Plaintiff suffered and continues to suffer injuries resulting and caused from the defective LAP-BAND, including but not limited to, including but not limited to, gastric perforation, pelvic abscess, substantial pain and suffering, loss of enjoyment of life and emotional distress.

22.    Defendant and their agents, apparent agents, servants and/or employees are liable and legally responsible to the Plaintiff for her injuries pursuant to Titles 15 and 21 of the United States Code, Title 21 of the Code of Federal Regulations, New York Products Liability Statutes, New York Uniform Commercial Code, New York Public Health Laws, New York General Business Law, and common law negligence, in one or more of the following respects in that they:

a.    placed into the market and into the stream of commerce, products, including

the LAP-BAND, that were defective in design and materials and unreasonably dangerous.

    b.    misrepresented to the general public, including Plaintiff, that the LAP-BAND and its components were safe for their intended uses;

    c.    designed, tested, manufactured, assembled, labeled, distributed, marketed, promoted and/or sold the LAP-BAND that was dangerous and could not be used for its intended purpose without unreasonable risk of injury to persons, including Plaintiff.

    d.    knew or should have known of the dangerous propensities of said LAP-BAND, yet continued its manufacture, distribution, assembly, promotion, marketing and sales for substantial profit with complete disregard for the safety of consumers and patients, including Plaintiff;

    e.    failed to adequately and properly test the LAP-BAND to ensure that it was free from defects and able to perform properly;

    f.    failed to adequately design and manufacture the LAP-BAND to ensure that it would not corrode, erode or deteriorate in patients, including Plaintiff;

    g.    breached the implied warranty of merchantability and fitness and that the LAP-BAND was not merchantable quality or fit for its intended purpose;

    h.    breached its express warranty made through their marketing campaigns, promotional activities, product labeling, package inserts, and/or written and verbal assurances that the LAP-BAND was safe and effective for use;

    i.    failed to timely report adverse events, failures and malfunctions regarding the LAP-BAND;

    j.    failed to timely and adequately investigate adverse events, failures and malfunctions regarding the LAP-BAND;

k.     failed to adequately and properly maintain records and/or reports regarding death, serious injury and/or malfunction to ensure the safety and effectiveness of the LAP-BAND;

l.     failed to adequately and properly follow and monitor the product once placed into the stream of commerce to determine any side effects, including its potential to cause injury;

m.     failed to provide adequate warning regarding the propensity of the LAP-BAND to cause injury;

n.     failed to warn the public, including Plaintiff, that the LAP-BAND was likely to fail and require removal, revision, and/or gastrointestinal repair surgery;

o.     failed to comply with federal requirements and regulations;

p.     failed to timely report adverse events, failures and malfunctions regarding the LAP-BAND, pursuant to 21 CFR Sec. 805.53;

q.     failed to timely and adequately investigate adverse events, failures and malfunctions regarding the LAP-BAND, pursuant to 21 CFR Sec. 803.50;

r.     failed to timely and adequately report any and all information concerning product failures and corrections, pursuant to 21 CFR Sec. 803.52;

s.     failed to timely and adequately report to the FDA, including a trend analysis, any reportable MDR events regarding the LAP-BAND that necessitate remedial action to prevent an unreasonable risk of substantial harm to the public, including Plaintiff, pursuant to 21 CFR Sec. 803.53;

t.     failed to timely and adequately report device corrections and/or removals regarding the LAP-BAND, pursuant to 21 CFR Sec. 806;

u.    failed to comply with FDA quality system requirements and regulations regarding design control, design, design validation, perfect performance and efficiency, and manufacturing and production standards, pursuant to 21 CFR Sec. 820;

v.    failed to adequately and properly maintain records and/or reports regarding death, serious injury, and/or malfunction to assure the safety and effectiveness of the LAP-BAND, pursuant to 21 U.S.C. Sec. 360(i);

w.    failed to timely and fully inform the FDA of unanticipated adverse effects, increases in the evidence of adverse effects, or device failures necessitating labeling, manufacturing or device modification;

x.    marketed, distributed and/or sold a misbranded product, pursuant to 21 U.S.C. Sec. 352; and

y.    marketed, distributed and/or sold an adulterated product, pursuant to 21 U.S.C. Sec. 351.

## FIRST CAUSE OF ACTION: NEGLIGENCE AGAINST DEFENDANT

23.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

24.    Defendant had a duty to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the LAP-BAND into the stream of commerce, including a duty to assure that the LAP-BAND would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

25.    Defendant failed to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality

control, and/or distribution of the LAP-BAND into interstate commerce in that Defendant knew or should have known that those individuals that had the LAP-BAND surgically implanted were at risk for suffering harmful effects from it, including but not limited to gastrointestinal erosion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and the need for revision, removal, and/or gastrointestinal repair surgery with the attendant risks of complications and death from such further surgery.

26.    The negligence of Defendant and its agents, servants, and/or employees, include, but are not limited to, the following acts and/or omissions:

a.    negligently designing the LAP-BAND in a manner which was dangerous to those individuals that had it surgically implanted;

b.    designing, manufacturing, producing, creating, and/or promoting the LAP-BAND without adequately, sufficiently, or thoroughly testing it;

c.    not conducting sufficient testing programs to determine whether or not the LAP-BAND was safe for use;

d.    Defendant herein knew or should have known that the LAP-BAND was unsafe and unfit for use by reason of the dangers to its users;

e.    selling the device without making proper and sufficient tests to determine the dangers to its users;

f.    negligently failing to adequately and correctly warn Plaintiff and/or Plaintiff's physicians, hospitals, and/or healthcare providers of the dangers of the LAP-BAND;

g.      negligently failing to recall their dangerous and defective LAP-BAND at the earliest date that it became known that the LAP-BAND was, in fact, dangerous and defective;

h.      failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant the LAP-BAND into their patients;

i.      negligently advertising and recommending the use of the LAP-BAND despite the fact that Defendant knew or should have known of its dangerous propensities;

j.      negligently representing that the LAP-BAND offered was safe for use for its intended purpose when, in fact, it was unsafe;

k.      negligently manufacturing the LAP-BAND in a manner which was dangerous to those individuals who had it implanted;

l.      negligently producing the LAP-BAND in a manner which was dangerous to those individuals who had it implanted;

m.      negligently assembling the LAP-BAND in a manner which was dangerous to those individuals who had it implanted;

n.      Defendant under-reported, underestimated and downplayed the serious danger of the LAP-BAND;

o.      failed to use due care in designing and manufacturing the LAP-BAND so as to avoid the aforementioned risks to individuals that had the LAP-BAND surgically implanted;

p.      failed to accompany their product with proper warnings;

q.      failed to accompany their product with proper instructions for use;

r.     failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the LAP-BAND;

s.     willful, reckless and wanton misconduct in allowing the LAP-BAND to be implanted in human beings without sufficient testing and with express knowledge of enhanced risks; and

t.     were otherwise careless and/or negligent.

27.     Despite that fact that Defendant knew or should have known that the LAP-BAND caused harm to individuals that had the LAP-BAND surgically implanted, Defendant continued to market, manufacture, distribute and/or sell the LAP-BAND.

28.     Defendant knew or should have known that consumers, such as Plaintiff, would suffer foreseeable injury and/or be at increased risk of suffering injury, including but not limited to, gastrointestinal erosion, as a result of Defendant's failure to exercise ordinary care, as set forth above.

29.     Defendant's negligence was the proximate cause of Plaintiff's physical, mental and emotional injuries and economic loss, including but not limited to, lap-band erosion, gastric perforation, pelvic abscess, and the need for LAP-BAND removal and gastrointestinal repair surgery, which Plaintiff has suffered and/or will continue to suffer.

30.     By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects, including but not limited to, severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and the need for revision, removal, and/or gastrointestinal repair surgery with the attendant risks of complications and death from such further surgery in a sum greater

than the jurisdictional limitations of all lower courts which would otherwise have jurisdiction.

31.    Further, as a result of the foregoing acts and omissions, Plaintiff has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

32.    In performing the foregoing acts and omissions, Defendant acted despicably, fraudulently, and with malic and oppression so as to justify and aware of punitive and exemplary damages.

33.    By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT) AGAINST DEFENDANT

34.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

35.    Defendant designed, manufactured, tested, marketed, and distributed the LAP-BAND into the stream of commerce.

36.    The LAP-BAND that was surgically implanted in Plaintiff was defective in its manufacture when it left the hands of Defendant in that it deviated from product specifications, posing a serious risk that it could fail in patients, therefore, giving rise to physical injury, pain and suffering, debilitation, and the need for revision/removal surgery with the attendant risks of complications and death from such further surgery.

37.   As a direct and proximate result of Defendant's placement of the defective LAP-BAND into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects, including but not limited to, severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, and the need for revision/removal surgery with the attendant risks of complications and death from such further surgery.

38.   Further, as a result of the foregoing acts and omissions, Plaintiff has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

39.   In performing the foregoing acts and omissions, Defendant acted despicably, fraudulently, and with malic and oppression so as to justify and aware of punitive and exemplary damages.

40.   By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY (DESIGN DEFECT)
## AGAINST DEFENDANT

41.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

42.   At all times herein mentioned, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the LAP-BAND, as hereinabove described that was surgically implanted in Plaintiff.

43.   At all times herein mentioned, the LAP-BAND was in an unsafe, defective, and inherently dangerous condition for users, including Plaintiff, that thad the LAP-BAND surgically implanted.

44.   The LAP-BAND was in an unsafe, defective, and inherently dangerous condition at the time it left Defendant's possession.

45.   At all times herein mentioned, the LAP-BAND was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendant.

46.   The LAP-BAND's unsafe, defective, and inherently dangerous condition was a cause of injury to Plaintiff.

47.   The LAP-BAND failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

48.   Plaintiff's injuries resulted from use of the LAP-BAND that was both intended and reasonably foreseeable by Defendant.

49.   At all times herein mentioned, the LAP-BAND posed a risk of danger inherent in the design which outweighed the benefits of that design.

50.   At all times herein mentioned, the LAP-BAND was defective and unsafe, and Defendant knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendant.   At all times hereinafter mentioned, Defendant knew, or should have known, that the LAP-BAND was in a defective condition and was and is inherently dangerous and unsafe.

51.    At the time of the implantation of the LAP-BAND into Plaintiff, the aforesaid product was being used for the purposes and in a manner normally intended.

52.    Defendant, with this knowledge, voluntarily designed the LAP-BAND in a dangerous condition for use by the public and, in particular, Plaintiff.

53.    Defendant had a duty to create a product that was unreasonably dangerous for its normal, intended use.

54.    Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defected product which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff, and Defendant is therefore strictly liable for the injuries sustained by Plaintiff.

55.    As a direct and proximate result of Defendant's placement of the defective LAP-BAND into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects, including severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, and the need for revision/removal surgery with the attendant risks of complications and death from such further surgery.

56.    Further, as a result of the foregoing acts and omissions, Plaintiff has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

57.    In performing the foregoing acts and omissions, Defendant acted despicably, fraudulently, and with malice and oppression so as to justify and aware of punitive and exemplary damages.

58.   By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FOURTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY (INADEQUATE WARNING)
## AGAINST DEFENDANT

59.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

60.   Defendant designed, manufactured, tested, marketed, and distributed into the stream of commerce the LAP-BAND. The LAP-BAND placed into the stream of commerce by Defendant was defective due to inadequate warnings because Defendant knew or should have known that the LAP-BAND could fail in patients and, therefore, give rise to physical injury, pain and suffering, debilitation, and the need for removal, revision, and/or gastrointestinal repair surgery with the attendant risks of complications and death from such further surgery, but failed to give consumers adequate warning of such risks.

61.   Further, the LAP-BAND placed into the stream of commerce by Defendant was surgically implanted in a manner reasonably anticipated by Defendant.

62.   As a direct and proximate cause of Defendant's placement of the defective LAP-BAND into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects, including severe and personal injuries, physical pain and mental anguish, diminished enjoyment of life, and the need for revision, removal, and/or gastrointestinal repair surgery with the attendant risks of complications and death from such further surgery.

63.    Further, as a result of the foregoing acts and omissions, Plaintiff has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

64.    In performing the foregoing acts and omissions, Defendant acted despicably, fraudulently, and with malic and oppression so as to justify and aware of punitive and exemplary damages.

65.    By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### FIFTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY AGAINST DEFENDANT
### (N.Y. U.C.C. SEC. 2-313 et seq.)

66.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

67.    Defendant designed, manufactured, tested, marketed, and distributed the LAP-BAND into the stream of commerce.

68.    Defendant expressly warranted that the LAP-BAND was a safe and effective weight loss system.

69.    Indeed, Defendant made numerous representations about the quality, safety, and effectiveness of the LAP-BAND, which form express warranties.

70.    The LAP-BAND placed into the stream of commerce by Defendant did not conform to these express warranties because it failed and caused severe gastrointestinal injury, including but not limited to, gastrointestinal erosion and perforation, thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for

revision, removal, and/or gastrointestinal repair surgery with the attendant risks of complications and death from such further surgery. As a direct and proximate result of Defendant's breach of express warranties regarding the safety and effectiveness of the LAP-BAND, Plaintiff experienced and/or will experience significant damages, including but not limited to, physical injury, economic loss, pain and suffering, and will continue to suffer such damages in the future.

71.     In taking the actions and omissions that caused these damages, Defendant was guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

72.     By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### SIXTH CAUSE OF ACTION
### BREACH OF IMPLED WARRANTY OF MERCHANTABILITY
### AGAINST DEFENDANTS (N.Y. U.C.C. SEC. 2-314 et seq.)

73.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

74.     Defendant designed, manufactured, tested, marketed, and distributed into the stream of commerce the LAP-BAND.

75.     At the time Defendant designed, manufactured, tested, marketed, and distributed into the stream of commerce the LAP-BAND, Defendant knew the use for which the LAP-BAND was intended, and impliedly warranted the LAP-BAND to be of merchantable quality.

76.     Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether the LAP-BAND was of merchantable quality.

77.     Contrary to Defendant's implied warranties, the LAP-BAND was not of merchantable quality or safe for the ordinary purposes for which it was to be used because the LAP-BAND was unreasonably dangerous and/or not reasonably fit for its intended, anticipated, or reasonably foreseeable use.

78.     As a direct and proximate result of Defendant's breach of implied warranties regarding the safety and effectiveness of the LAP-BAND, Plaintiff experienced and/or will experience significant damages, including but not limited to, physical injury, economic loss, pain and suffering, the need for further surgery, and will continue to suffer such damages in the future.

79.     In taking the actions and omissions that cause these damages, Defendant was guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

80.     By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLED WARRANTY OF FITNES FOR A PARTICULAR PURPOSE
## AGAINST DEFENDANT (N.Y. U.C.C SEC. 2-315 et seq.)

81.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

82.     Defendant designed, manufactured, tested, marketed, and distributed into the stream of commerce the LAP-BAND.

83.   At the time Defendant designed, manufactured, tested, marketed, and distributed into the stream of commerce the LAP-BAND, Defendant knew the use for which the LAP-BAND was intended, and impliedly warranted the LAP-BAND to be safe for such use.

84.   Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether the LAP-BAND was safe for its intended use.

85.   Contrary to Defendant's implied warranties, the LAP-BAND was not safe for its intended use or fit for the particular purpose for which it was designed, manufactured, tested, distributed or sold – for use and implantation as a weight loss system – because the LAP-BAND was unreasonably dangerous and/or not reasonably fit for its intended, anticipated, or reasonably foreseeable use.

86.   As a direct and proximate result of Defendant's breach of implied warranties regarding the safety and effectiveness of the LAP-BAND, Plaintiff experienced and/or will experience significant damages, including but not limited to physical injury, economic loss, pain and suffering, the need for further surgery, and will continue to suffer such damages in the future.

87.   In taking the actions and omissions that cause these damages, Defendant was guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

88.   By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT**
**AGAINST DEFENDANT (N.Y. GEN. BUS. LAW SECS. 349 et seq. and 350-e et seq.)**

89.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

90.     Defendant unfairly, unconscionably, and deceptively advertised, marketed, sold, and represented the LAP-BAND as a high-quality, safe, and effective weight loss system to Plaintiff and Plaintiff's physicians.

91.     Before Defendant advertised, marketed, sold, and represented the LAP-BAND that was implanted in Plaintiff, Defendant knew or should have known of the unreasonable dangers and serious health risks that such a system posed to patients, including Plaintiff.

92.     Plaintiff purchased and used the LAP-BAND for personal use and thereby suffered ascertainable losses as a result of Defendant's actions in violation of the consumer protection laws.

93.     Had Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased the LAP-BAND, and would not have incurred related medical costs and injury.

94.     Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, monies from Plaintiff for the LAP-BAND that would not have been paid had Defendant not engaged in unfair and deceptive conduct.

95.     Unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following: representing that goods or services have characteristics, ingredients, uses, benefits, or quantities that they do not have; advertising

goods or services with the intent not to sell them as advertised, and engaging in fraudulent or deceptive conduct that creates a likelihood confusions or misunderstanding.

96.    Plaintiff was injured by the cumulative and indivisible nature of Defendant's conduct.

97.    The cumulative effect of Defendant's conduct directed at patients, physicians, and consumers was to create demand for and sell the LAP-BAND.

98.    Each aspect of Defendant's conduct combined to artificially create sales of the LAP-BAND.

99.    Defendant has a statutory duty to refrain from unfair and deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of the LAP-BAND.

100.    Had Defendant not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the LAP-BAND, and would not have incurred related medical costs.

101.    Defendant's deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians and consumers, including plaintiff, constituted unfair and deceptive acts and trade practices in violation of the Sate consumer protection statutes listed.    Defendant's actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protecting statutes.

102.    Defendant engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of N.Y. Gen. Bus. Law Secs. 349 et seq. and 350-e et seq.

103.    Under the statute listed above to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising, Defendant is the supplier, manufacturer, advertiser, and seller who is subject to liability under such legislation for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

104.    Defendant violated the statutes that were enacted in these states to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising by knowingly and falsely representing that the LAP-BAND was fit to be used for the purpose for which it was intended, when in fact the LAP-BAND was defective and dangerous, and by other acts alleged herein.  These representations were made in uniform promotional materials.

105.    The actions and omissions of Defendant alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices.

106.    Defendant's deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers constituted unfair and deceptive acts and practices.

107.    By reason of the unlawful acts engaged in by defendant, and as a direct and proximate result thereof, Plaintiff has suffered ascertainable losses and damages.

108.    As a direct and proximate result of Defendant's violations of the State's consumer protection laws, Plaintiff has sustained economic losses and other damages and is entitled to statutory and compensatory damages in an amount to be proven at trial.

109.   As specifically described in detail above, Defendant knew that the LAP-BAND subjected patients to failure and severe gastrointestinal damage, painful and harmful physical reactions, and the need for removal, revision, and/or gastrointestinal repair surgery.

110.   As a direct and proximate result of Defendant's representations, Plaintiff has experienced and/or will experience significant damages, including but not limited to, lap-band erosion, gastric perforation, pelvic abscess, permanent physical injury, economic loss, pain and suffering, and surgery to repair the physical damage caused by the LAP-BAND.

111.   By reason of the above, Plaintiff has sustained damages, both general and special, in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

WHEREFORE, Plaintiff prays for the following relief:

I.      Judgment in favor of Plaintiff and against Defendant for damages in such amounts as may be proven at trial;

II.     Compensation for both economic and non-economic losses, including but not limited to, medical expenses, loss of earnings, disfigurement, pain and suffering, mental anguish, and emotional distress, un such amounts as may be proven at trial;

III.    Punitive and exemplary damages in such amounts as may be proven at trial;

IV.     Attorneys' fees and costs;

V.      Interest; and

VI.   Such further legal and equitable relief as the Court may deem just and proper.

Dated:  October 12, 2016
        New York, New York

MUNAWAR & ANDREWS-SANTILLO, LLP
By: Joseph Parise, Esq.
*Attorneys for Plaintiff*
420 Lexington Avenue, Suite 2601
New York, New York 10170
(212) 400-4000

## ATTORNEY'S VERIFICATION BY AFFIRMATION

JOSEPH PARISE, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am associated with MUNAWAR & ANDREWS-SANTILLO, LLP, attorneys of record for plaintiff. I have read the annexed SUMMONS & VERIFIED COMPAINT and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

The reason I make the foregoing affirmation instead of Plaintiff is because Plaintiff resides outside of the county wherein your Affirmant maintains offices.

DATED:     New York, New York
           August 11, 2016

_____
JOSEPH PARISE, ESQ.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NIAGARA

FRANCES MOODY,

Plaintiff,

- against -

ALLERGAN USA, INC.,

Defendant.

## SUMMONS & VERIFIED COMPLAINT

MUNAWAR & ANDREWS-SANTILLO, LLP
*Attorneys for Plaintiff*
FRANCES MOODY
420 Lexington Avenue, Suite 2601
New York, NY 10170
212-400-4000

*ATTORNEY'S CERTIFICATION. Upon reasonable inquiry under the circumstances, I certify that the presentation of these papers or contentions therein is made in good faith and is not frivolous.*

Dated: October 13, 2016

Signature: _____
JOSEPH PARISE, ESQ.

**SUPREME COURT OF THE STATE OF NEW**
**COUNTY OF NIAGARA** _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _x

FRANCES MOODY

|  |  |  |  |
|---|---|---|---|
| | Plaintiff/Petition | Index | E159771/2016 |

ALLERGAN USA, INC.

Defendant/Responde _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _x

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing

**Parties not represented by an attorney:** Unrepresented litigants are exempt from efiling. They can serve and file documents in paper form and must be served with documents in paper form. However, an unrepresented litigant

EFM-1

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www. nycourts.gov/efileunrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646- 386-3033; e-mail: efile@nycourts.gov).

Dated  10/13/2016

Signature

ASHLEY ANDREWS-SANTILLO
Name

MUNAWAR & ANDREWS-SANTILLO, LLP
Firm Name

420 Lexington Avenue, Suite 2601
Address

New York, NY  10170
City, State, and Zip

(212) 400-4000
Phone

aas@mlawfirm.com
E-Mail


To:   Defendants


9/3/15